## Case No. 2,304.

### CALDWELL v. The STATE OF MAINE.

[N. Y. Times. Nov. 8, 1861.]

Circuit Court, S. D. New York. 1861.

COLLISION—CHANGE OF COURSE.

[1. The preponderance of evidence established that a tug proceeding down the East river in New York harbor, when a little east of Whitehall slip, to avoid an ingoing ferry boat, suddenly changed her course southerly towards the middle of the river, and across the track of a Sound steamer on her usual course to her berth in the North river, and that a collision took place notwithstanding the efforts of those on the steamboat to prevent it. *Held*, that the tug was in fault.]

[2. Case of same title cited in The City of Paris. Case No. 2,765, to the point that a vessel approaching a steamer shall keep her course, and that the steamer has the right to presume that this rule will be complied with.]

[Appeal from the district court of the United States for the southern district of New York.

[Libel by Caldwell, owner of the tug Rattler, against the steamboat State of Maine. There was a decree dismissing the libel, and libelant appeals.]

Mr. McMahon, for libelant and appellant.
Mr. Cutting, for appellee.

NELSON, Circuit Justice. This is a libel filed by Caldwell, the owner of the steam tug Rattler, to recover damages against the steamboat State of Maine, for a collision on the 19th January, 1859, near the line of meeting of the tides of the East and North rivers, and off from Whitehall slip, a little east of it. The collision was in the daytime, about 10 o'clock a. m. The Rattler was passing down the East and around into the North river, for the purpose of towing a vessel lying at anchor off the Battery, opposite the flagstaff. The State of Maine was on her usual trip from Fall Creek to the city, and making her way through the East river to her berth in the North river, on the New York side. The position of the libelant is that after the Rattler had passed the South Ferry slip, and was on her proper course to the place of her tow, the State of Maine came up astern, and struck the tug on her larboard side with her starboard, and thereby caused the damage complained of. The position of the State of Maine is that she was pursuing her usual track in the river, near the middle of it, and which was a safe distance from the track of the Rattler, and that the latter suddenly changed her course more southerly, and into the river, and thereby caused the collision. A large number of witnesses from the State of Maine, all on board the tug, and several who witnessed the collision from the shore, have been examined; and, as usual in these cases, the evidence is conflicting and irreconcilable.

The court below came to the conclusion that the preponderance was in favor of the position of the State of Maine, or, at least, was not so satisfactory and decisive in favor of that of the Rattler as would justify a decree in its favor, and dismissed the libel. The same evidence, with some additional proofs in this court, has been again very fully and thoroughly discussed before me by a learned counsel; and, after the best consideration I have been able to give it, I must say that I concur with the judgment of the court below. The strong impression on my mind, from a careful examination of the proofs, is, that while slowing and even stopping as claimed, to allow the South Ferry boat, which was crossing her track, to pass into her slip, the Rattler took a direction more southerly, and unexpectedly to the State of Maine, bore more in towards the middle of the river and across her track; which change of course was so sudden, that not-

withstanding all proper efforts, which were immediately exerted to avoid it, the collision was inevitable. This is proved by all the witnesses on board of the State of Maine, many of whom, from their position, and the opportunity afforded, could not well be mistaken. Indeed, the witnesses on the Rattler, and others for the libelant, admit the falling off of the head of the vessel at the time. The difference is in the degree of the change of her course. Upon the whole evidence, I cannot say that the State of Maine was in fault. Decree below affirmed.